J-A02007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ANTONIO SORTINO, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE WASHINGTON HOSPITAL AND | : | |
| GARY B. WEINSTEIN | : | |
| | : | No. 621 WDA 2018 |
| Appellants | : | |

Appeal from the Judgment Entered March 29, 2018
In the Court of Common Pleas of Washington County Civil Division at
No(s): 2013-3118

BEFORE: SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.: FILED DECEMBER 16, 2020

The Washington Hospital and Gary B. Weinstein, ("Appellants"), appeal from the judgment entered in the Common Pleas Court of Washington County on March 29, 2018. We affirm.

This appeal stems from a claim of tortious interference with a contract. Antonio Sortino, M.D. ("Sortino") was a cardiac surgeon, who first joined Three Rivers Cardiac Institute ("Three Rivers") in 1990. N.T., 3/7/17, at 101, 110. When he began with Three Rivers, Sortino started performing heart surgery at Mercy Hospital, and he remained there until 1994. Id. at 116. In 1994, Sortino was assigned to Washington Hospital ("the Hospital"), first on a part-time basis, and then full-time. Id. at 117. In approximately September of 2002, the Hospital entered into a contract with Three Rivers by which Three Rivers became the exclusive provider of open heart cardiac-surgery services

at the Hospital. Id. at 3. Eventually, Sortino became the primary cardiac surgeon for the Hospital. Id. at 120-121.

Sortino became a shareholder in Three Rivers in 1995. N.T., 3/7/17, at 127-128; Exhibit 5. The shareholder agreement contained a covenant not to compete, which restricted Sortino from working as a cardiac surgeon in Allegheny, Washington, Westmoreland, and Butler Counties for a period of five years after any cessation of employment with Three Rivers. N.T., 3/7/17, at 128-129. Sortino served as Medical Director for the Hospital from 2002 to 2007, and was reappointed as Medical Director for the Hospital effective July 1, 2011. N.T., 3/7/17, at 141, 157, 162.

On January 13, 2012, Mr. Weinstein, CEO and President of the Hospital, sent a letter to Three Rivers, requesting that Sortino be removed as Medical Director and as a surgeon at the Hospital on the basis of three events involving Sortino's alleged inappropriate conduct. N.T., 3/14/17, at 1408-1411; Exhibit H-3, Letter 1/13/12. An incident on November 22, 2011, during which Sortino allegedly lost his temper with the Hospital's staff, served as the primary basis for the request. Id.; N.T., 3/7/17, at 203-206. Mr. Weinstein eventually demanded that either Sortino be removed or the exclusive contract between the Hospital and Three Rivers would be terminated. Ultimately, Sortino was removed from the Hospital by Three Rivers, and suffered a reduced income. N.T., 3/7/17, at 207-208. Despite this removal, however, the Hospital continued to allow Sortino to perform surgeries for several months. Id. at 208-210.

Sortino withdrew as a shareholder of Three Rivers and resigned his position as an employee on March 15, 2012. N.T., 3/9/17, at 484. As a result of withdrawing as a shareholder, Sortino received $130,000 for his shares. N.T., 3/9/17, at 487. Sortino signed a mutual release of all claims against Three Rivers. Three Rivers offered Sortino employment at a reduced salary at Butler Memorial Hospital ("Butler Hospital"), where Sortino was reassigned on March 19, 2012. N.T., 3/8/17, at 285, 314-316. While at Butler Hospital, Sortino began looking for new employment. Id. at 303. Three Rivers terminated Sortino's employment on February 5, 2013.

After leaving Butler Hospital, Sortino briefly received unemployment compensation benefits. Sortino eventually was hired at Conemaugh Hospital in Johnstown, Pennsylvania, and he then went to West Virginia University Hospital. N.T, 3/8/17, at 317-321. After West Virginia University Hospital, Sortino accepted employment in Ohio at Affinity Hospital, then at Aultman Health System, in Canton, Ohio. Id. at 324-326. During these times, Sortino lived away from his family and earned less than what he made at Washington Hospital. N.T., 3/8/17, at 317-329. In 2017, he finally earned as much money as he did in 2011. N.T., 3/9/17, at 611.

Sortino filed a complaint on October 7, 2013, alleging that Appellants tortiously interfered with his contractual relations with his employer, Three

Rivers.[1,2]  A two-week jury trial took place.  At the close of Sortino's case-in-chief, Appellants moved for a compulsory non-suit, which the trial court denied.

At the close of Appellants' case, they moved for a directed verdict, which the trial court also denied.  The case was submitted to the jury.  The jury returned a verdict in favor of Sortino and against Appellants and awarded Sortino damages in the amount of $3,500,000.  Post-trial motions were filed and denied.  A timely appeal was filed.  Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants present the following issues for our review:

1.      Did the trial court commit an error of law and/or abuse of discretion when it denied Appellants' motions for directed verdict and judgment notwithstanding the verdict and should have instead directed the entry of judgment in Appellants' favor where:

   a.      There was insufficient evidence to establish all elements of a tortious interference with contract claim?

   b.      The evidence established that Mr. Weinstein acted at all times within the scope of his authority as CEO and President of the Hospital and did not engage in any misfeasance?

2.      Did the trial court commit an error of law and/or abuse of discretion when it failed to order a new trial or enter a remittitur, where:

_____

[1] An Amended Complaint was filed on November 14, 2013.

[2] The Complaint also contained a breach-of-contract count, which the trial court dismissed through a summary judgment motion.

a. The damages awarded to Dr. Sortino were so excessive that the verdict was against the weight of the evidence and/or the result of passion, prejudice, sympathy for Dr. Sortino, mistake, corruption, and/or a misconception of the law?

b. Dr. Sortino presented insufficient evidence of emotional distress and there was no connection between his alleged emotional distress and the letter sent by the Hospital to Three Rivers requesting his removal?

c. The damages awarded to Dr. Sortino were punitive in nature when he was not legally entitled to punitive damages?

3. Did the trial court commit an error of law and/or abuse its discretion when it failed to properly instruct the jury that:

a. Dr. Sortino must prove that Appellants had an intent to harm Dr. Sortino by interfering with a contractual relationship rather that a mere intent to interfere?

b. Dr. Sortino must prove that the Hospital and Mr. Weinstein were not providing truthful information or honest advice to Three Rivers or acting at least in part to protect some legitimate interest?

c. Mr. Weinstein could not be held individually liable for acting in the scope of his authority as a corporate officer unless Dr. Sortino proves that Mr. Weinstein engaged in misfeasance rather than mere nonfeasance?

d. Damages should not be awarded on the basis of sympathy or benevolence but should be limited to reasonable compensation for the loss involved, that any liability on the part of Appellants was limited to actual damages that they directly and proximately cause, and that Dr. Sortino was not entitled to punitive damages?

Appellants' Brief at 6-7.

Upon review of the issues raised, the credibility determinations made by the trial court, the significant certified record, the briefs of the parties, and the applicable legal authority, we conclude that the trial court opinion by the Honorable President Judge, Katherine B. Emery, entered on April 18, 2019, comprehensively and correctly disposed of Appellants' claims. Accordingly, we affirm the judgment entered in favor of Sortino, and we do so based on the trial court's opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2020

Copies: Anthony Cillo, Esq.; Phillip J. Binotto, Esq.

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

ANTONIO SORTINO, M.D., )
)
    Plaintiff, )
)
v. )    NO. 2013-3118
)
THE WASHINGTON HOSPITAL and )
GARY B. WEINSTEIN, )
)
    Defendants. )

## OPINION PURSUANT TO PA RULES OF APPELLATE PROCEDURE 1925 (a)

This is a case wherein the Plaintiff claimed that the Defendants tortiously interfered with his contractual relations with his employer. Following a two-week jury trial, the jury returned a verdict in favor of the Plaintiff and against the Defendants and awarded the Plaintiff damages in the amount of $3,500,000. This Opinion is written in support of the verdict pursuant to Pa. R.A.P. Rule 1925(a).

### FACTUAL AND PROCEDURAL HISTORY

On November 14, 2013, the Plaintiff-Appellee, Dr. Antonio Sortino ("Dr. Sortino") commenced this action alleging that both Defendants-Appellants, the Washington Hospital ("Hospital") and its CEO, Gary B. Weinstein, tortiously interfered with the contract Dr. Sortino had with its employer, Three Rivers Cardiac Institute, Inc. ("Three Rivers Cardiac")[1] The case

---

[1] The complaint also contained a breach of contract count, which the court dismissed through a summary judgment motion

1

proceeded to trial on the tortious interference claims against both the Hospital and Mr. Weinstein. A summary of the facts established at trial is set forth as follows:

Dr. Sortino was born in Italy and completed medical school there. (T.T. pp. 102, 104). After completing a residency program at McKeesport Hospital in Pittsburgh and a cardiac surgical residency at Yale University in Connecticut, Dr. Sortino was employed in 1990 by Three Rivers under the direction of Dr. Ronald Pellegrini. (T.T. pp. 106-08). He became board certified as a heart surgeon and has maintained his certification. (T.T. p. 108). He became a shareholder of Three Rivers in 1995 (Exhibit 5). The shareholder agreement contained a covenant not to compete which restricted Dr. Sortino from working as a cardiac surgeon in Allegheny, Washington, Westmoreland and Butler Counties for a period of five years after any cessation of employment with Three Rivers. (T.T. p. 129). Three Rivers initially assigned him to Mercy Hospital and beginning in 1994, Dr. Sortino began working at Washington Hospital on a full-time basis. (T.T. pp. 116-17). Three Rivers had an exclusive contract with Washington Hospital whereby Three Rivers provided surgeons to perform all of the cardiac procedures at the Hospital. (T.T. pp. 1003-4). The Cardiovascular Services Agreement was extended in 2007 and the Hospital continued to contract exclusively with Three Rivers for open heart cardiac surgery services. The contract provided that Washington Hospital pay Three Rivers Cardiac a yearly fee and Three Rivers was permitted to also receive a fee from billing patients and the insurance providers directly. (T.T. pp. 244, 291, 1370). As an employee of Three Rivers, Dr. Sortino had a lucrative salary and benefits, including but not limited to paid malpractice insurance, professional dues and education, health insurance and a car. (T.T. pp. 111-16).

2

Dr. Sortino was an exceptional and busy surgeon who performed as many as 320 surgeries a year. (T.T. p. 118-19). He was known as a hard driven and highly skilled surgeon. (T.T. pp. 536-7). Pursuant to the Cardiovascular Services Agreement, a Medical Director was to be named. The Hospital appointed Dr. Sortino as Medical Director of Cardiovascular Services in 2002 and he served until 2007. (T.T. pp. 141, 157). He was appointed again as Medical Director on July 1, 2011 upon the retirement of Dr. DeMarco. (T.T. p. 158). Before doing so, Dr. Sortino asked Mr. Weinstein about becoming a hospital employee. (T.T. pp. 159, 1686). Mr. Weinstein was aware that a non-compete clause prohibited that arrangement absent approval from Three Rivers. While Mr. Weinstein was interested in Dr. Sortino becoming an employee as a cost saving measure, Three Rivers refused to waive the non-compete clause. (T.T. pp. 1686, 243).

On January 13, 2012, Mr. Weinstein sent a letter to Three Rivers Cardiac, requesting that Dr. Sortino be removed as Medical Director and as a surgeon at Washington Hospital. Exhibit PH-3, D-60. The Hospital and Mr. Weinstein refer to three events that supported his decision. The first event occurred on November 22, 2011 in the Critical Care Unit ("CCU"). Dr. Sortino became upset that the nurses in the unit had not followed his instruction that a PICC line be inserted in his patient who had experienced post-surgery complications. (T.T. pp. 186-90). The line could be used for the administration of certain drugs; he was upset that his order to take blood gas measurements had not been followed. (T.T. pp. 190-92). When Dr. Sortino arrived in the CCU and found his orders had not been followed, he confronted the nursing staff in a loud and angry and profane manner. A family member of another patient approached the nursing staff and Dr. Sortino to complain about how Dr. Sortino was treating the nurses. (T.T. pp. 192-5). Dr. Sortino calmed down shortly after the outburst. (T.T. p. 196).

3

Dr. Sortino was subsequently reprimanded for his behavior during a meeting with the Medical Executive Committee, and he admitted he raised his voice. (T. pp. 196-97). Dr. Costello acknowledged in his testimony that this complication was life threatening.[2] (T.T. p. 1054). Dr. Sortino also received a peer review letter for this incident. (T.T. p. 197, Exhibit 63). Dr. Sortino apologized to the nurses and other staff, but was concerned that his behavior was the focus of this event, and not the fact that his medical order had been disregarded. (T.T. pp. 197, 203). Dr. Sortino was removed as this patient's treating physician because he was too emotionally and personally involved. (T.T. pp. 198, 323). He complied with this removal mandate, but later decided to check on this patient. When he arrived, he discovered that blood gasses had not been checked for sixteen hours, well past the expected every four hour monitoring. (T.T. p. 189). Dr. Sortino ordered blood gasses on this patient STAT, but it was already too late and the patient ultimately died. (T.T. pp. 198-200).

The second event in question was a Critical Care Committee meeting at the hospital on June 10, 2012. (T.T. pp. 213, 1044). The purpose of this meeting was for medical staff to present and discuss issues that they felt needed to be addressed. (T.T. p. 214). Dr. Sortino was often a participant in these meetings, and at this particular one, he attempted to address the issue of his order not being followed. (T.T. p. 214). Dr. Sortino's participation became very passionate as he felt strongly about his suggestions for improvements. Dr. John Costello described his behavior as out of control. (T.T. p. 1044; Exhibit J-3). The description that Dr. Sortino was out of control was reported to Mr. Weinstein who was not present at the meeting and despite the fact that it was cited as a reason for Dr. Sortino's requested removal, Mr. Weinstein never attempted to speak with most people who attended this meeting in order to get

---

[2] Dr. Cullen also admitted that while it was not uncommon for a nurse to question a doctor's order, it was wrong for a nurse to ignore an order altogether. (T.T. p. 1337)

4

the full story. (T.T. pp. 1830-32). The minutes of the meeting reflect that Dr. Sortino raised complaints about nurses not following doctors' orders. (Exhibit P-84).

The third event occurred at a staff dinner. Dr. Sortino told medical staff at this dinner that Dr. Wilson and Kelly Neal were out to get him. (T.T. p. 217). Mr. Weinstein considered this statement to be adverse behavior. In January 2012 Mr. Weinstein called for a meeting with Dr. Sortino and Dr. Cullen. Mr. Weinstein told Dr. Sortino that it would be best if they would part ways and he could either resign or be terminated. (T.T. p. 2014). Dr. Sortino refused to resign and begged for Mr. Weinstein to reconsider. (T.T. pp. 206, 1344). Mr. Weinstein refused to change his mind and took steps to have Three Rivers remove Dr. Sortino from the Hospital. (T.T. p. 207).

At a subsequent meeting with Three Rivers, Mr. Weinstein demanded Dr. Sortino be removed or the exclusive contract between the Hospital and Three Rivers would be terminated. (T.T. pp. 207-08, 379). This meeting was followed by a January 13, 2012 letter where Mr. Weinstein again requested Dr. Sortino's removal. (D. Ex. H-3). This was an ultimatum for Three Rivers to comply with or they could potentially lose the exclusive contract.[3] Mr. Weinstein stated in the letter to Three Rivers that Hospital employees no longer wanted to work with Dr. Sortino. (Exhibit DH-3). A Petition was sent around and signed by 57 Hospital operating room and critical care personnel in support of Dr. Sortino and presented to Mr. Weinstein and the Board. (P. Ex. 52). Dr. Sortino was removed from the Hospital by Three Rivers and he suffered from a reduced income as a result. (T.T. pp. 208-09, 479). Even with this removal, however, the Hospital continued to allow Dr. Sortino to perform surgeries in the Hospital for several months until they were able to find a replacement. (T.T. pp. 209-10, 283).

[3] This was not the first time that the Hospital threatened Three Rivers with termination of the exclusive contract. The Hospital made a similar demand in 2006 when it demanded that Three Rivers hire and place at the Hospital a new doctor, the son of a Hospital Board member. (T.T. pp. 153-55, 224-27).

5

During this time, Dr. Sortino performed an additional 30-40 surgeries. (T.T. pp. 209-10, 283). There was testimony supporting the fact that Dr. Sortino did not look very good during this time. (T.T. p. 702).

Dr. John Conte, from Johns Hopkins University Hospital, was hired by the Hospital to examine the cardiac program. Dr. Conte concluded that the program was dysfunctional and lacked leadership. (Dr. Conte Deposition Transcript pp. 26-7). He recommended a change of leadership. (Id @ p. 29). His report was presented to the Hospital in February of 2012, after Dr. Sortino had been removed. (Id. @ 28).

Dr. Sortino withdrew as a shareholder of Three Rivers Cardiac on March 15, 2012 and was reassigned to Butler Memorial Hospital shortly thereafter at a reduced salary. (T.T. pp. 209, 315-17, 323). He signed a Mutual General Release of All Claims against Three Rivers Cardiac which Three Rivers from breach of contract and tortious or negligent interference with contract rights claim. (Exhibit J-4).[4] While at Butler Hospital, Dr. Sortino began looking for new employment. His efforts were hampered in two ways: the non-compete clause in his shareholder's agreement and his lack of experience in thoracic and vascular surgery. (T.T. pp. 289-9; 586-7; 591, 651). His many years at Washington Hospital was spent exclusively performing cardiac surgery. Over this time, cardiac surgery was on the decline due to different outpatient procedures, such as lasers and stenting and drugs, and most cardiac surgeons were also proficient in vascular and thoracic surgery but Dr. Sortino was not because at Washington Hospital, he was the only cardiac surgeon with privileges there and was extremely busy on a full-time basis. (T.T. p. 119). Three Rivers gave him a 90 day termination and he left Butler Hospital on February 5, 2013. (Exhibit P-8).

---

[4] A full copy of the Mutual Release is attached to Defendants' Brief dated March 2, 2017

6

After he left Butler, he briefly received unemployment compensation. He was hired at Conemaugh Hospital in Johnstown, Pennsylvania. (T.T. pp. 317-19; 393-4). He then went to West Virginia University. (T.T. p. 321). In both Johnstown and Morgantown, Dr. Sortino rented an apartment and lived away from his wife and two children and earned less money than he did at Washington Hospital. After West Virginia, Dr. Sortino accepted employment in Ohio at Affinity Hospital, then at Altman Health System in Canton, Ohio, again living away from his family. (T.T. pp. 101, 327). In 2017, he finally earned as much money as he did in 2011.

Dr. Sortino hired David Yoo as a head hunter to assist him in obtaining employment. Dr. Yoo testified that Dr. Sortino was very stressed over his employment status and also depressed about having to look for new employment at this mature stage of his career. (T.T. p. 632, 611).

As stated initially, the jury returned a verdict in favor of Dr. Sortino and awarded him damages of $3,500,000. After the jury's verdict, the Appellants filed Post-Trial Motions which were argued and denied. This timely appeal ensued.

## ISSUES ON APPEAL

The Appellants, Hospital and Weinstein, filed a Statement of Matters Complained of on Appeal setting forth the issues in 17 paragraphs with multiple subparts, raising a total of 30 issues and spanning five pages. Although this case had a single count, multiple theories and defenses were presented in the two week trial. Despite the lengthy Statement of Matters Complained of, the Court finds that it is able to identify the issues on appeal and a claim for waiver is not warranted.

## STANDARD OF REVIEW

7

For the first six issues, the Appellants assert that the Court abused its discretion or committed an error of law when it failed to grant the motions for compulsory nonsuit, motion for directed verdict and/or motion for judgment notwithstanding the verdict and dismissed the case. A review of the applicable standards for those motions are as follows:

## JUDGMENT NOTWITHSTANDING THE VERDICT

When a party seeks judgment as a matter of law JNOV, there are two bases upon which a trial court may enter such a judgment. *Rohm & Haas Co. v. Continental Gas Co.*, 732 A.2d 1236, 1247 (Pa. Super. 1999). Post-trial judgment as a matter of law can be entered upon a showing that: the movant is entitled to judgment as a matter of law, and/or the evidence was so weighted in favor of the movant that "no two reasonable minds could disagree that the verdict should have been rendered for the movant." *Id.* (quoting *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992)); *Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 260 (Pa. Super. 2014). Additionally, with JNOV, the evidence shall be construed more favorably to the verdict winner, and the verdict winner shall be given the benefit of every reasonable inference of fact and any conflict relating to the evidence must be resolved in his favor. *Rohm*, 732 (A.2d 1236, 1247. JNOV should only be entered when there is a clear case and if there are any doubts they must be resolved for the verdict winner and should only be granted in extreme cases. *Id.* The jury is the trier of fact, and judgment as a matter of law should not be granted where the evidence conflicts on a material fact. *Renninger v. A & R Machine Shop*, 163 A.3d 988, 995 (Pa. Super. 2017).

## COMPULSORY NONSUIT

A defendant's motion for compulsory nonsuit allows him or her to test the evidence and may be granted on where it is clear the plaintiff has failed to establish a cause of action. *Hong*

8

*v. Pelagatti*, 765 A.2d 1117, 1121 (Pa. Super. 2000); *Poleri v. Salkind*, 683 A.2d 649, 653 (1996). The evidence is to be construed in favor of the plaintiff, and if plaintiff has not introduced sufficient evidence to establish the cause of action then nonsuit may be proper. *Id.* The trial court must make this determination prior to jury determination, and any conflicts are construed in favor of the non-moving party. *Id.* Additionally, it has been established that the factfinder has discretion to disregard or accept all, part, or none of a witness's testimony. *Caselli v. Powlen*, 937 A.2d 1137, 1139 (Pa. Super. 2007).

## DIRECTED VERDICT

A motion for directed verdict may only be denied where "the facts are clear and there is no room for doubt." *Lear, Inc. v. Eddy*, 749 A.2d 971, 973 (Pa. Super. 2000); *Flaherty v. Gracias*, 874 A.2d 1239, 1246 (Pa. Super. 2005). The scope upon review is whether or not the trial court abused its discretion to a point that it impacted the outcome of the case. *Lear, Inc.*, 749 A.2d 971, 973; *Perkins v. Desipio*, 736 A.2d 608, 609 (Pa. Super. 1999). The facts must be considered in favor of the nonmoving party and the court must accept as true any evidence that supports that party and reject any adverse testimony. *Id.*

## ISSUES

### 1. INTENT TO HARM

The evidence failed to establish that the Hospital and Mr. Weinstein acted with the intent to harm Dr. Sortino by interfering with his Three Rivers employment contract. (Statement of Matters Complained of on Appeal 1.a)

Tortious interference occurs when one party intentionally and improperly interferes with the performance of a contract between a plaintiff and a third party. *Adler, Barish, Daniels, Levin & Creskoff v. Epstien*, 393 A.2d 1175, 1183-4 (Pa. 1978). In cases concerning tortious

9

interference, the Pennsylvania Supreme Court expressly adopted the test set forth in Section

766 of the Restatement (Second) of Torts, *Id.*, at 1184. The elements of the test are:

> (1) Existence of a contractual relationship between the complainant and a third party.
>
> (2) Intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;
>
> (3) Absence of privilege or justification on part of the defendant; and
>
> (4) Occasioning of actual damage as a result of defendant's conduct.

Restatement (Second) of Torts §766 (1979); *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct.

2008).

To prove the second element of intent, a defendant need only understand that the

consequences of his or her actions'are substantially likely to occur.

Restatement (Second) of Torts §8A (1965); *Phillips*, supra at 429.

Under the Restatement, intentional interference with performance of contract by a third

person occurs when

> "one who intentionally and improperly interferes with the performance of a contract
>
> (except a contract to marry) between another and a third person by inducing or
>
> otherwise causing the third person not to perform the contract, is subject to liability to
>
> the other for the pecuniary loss resulting to the other from the failure of the third person
>
> to perform the contract."

R.2d Torts 766 (1979).

The comments to the Restatement provide the Restatement applies if the "actor acts for

the primary purpose of interfering with the performance of the contract, and also if he desires to

interfere. *Id.* at j. Additionally, comment r states that ill will is not an "essential condition of

10

liability" and a person can be liable even if there is no desire to harm. *Id.* When courts state that an element of this cause of action is intent to harm, this should be understood to mean an "intent to interfere" with a contract. *Yaindl v. Ingersoll-Rand Co.*, 422 A.2d 611, 622 j.11 (Pa. Super. 1980)

The evidence at trial was that Mr. Weinstein demanded that Three Rivers Cardiac remove him as a heart surgeon at Washington Hospital. Such a request would obviously cause Dr. Sortino harm, even if Three Rivers simply sent him to another hospital. He had worked at Washington Hospital for over twenty years and was making a very good salary. While Mr. Weinstein testified that he had no intention to harm, the jury was free to accept or reject that testimony.

## 2. JUSTIFICATION

The evidence failed to establish that the Hospital and Mr. Weinstein lacked justification or privilege when the Hospital exercised its negotiated contractual right in the Exclusive Contract to request Dr. Sortino's removal from the Hospital due to his poor performance and leadership, only made truthful statements to Three Rivers, and acted at all times in good faith and with the legitimate interest of protecting the Hospital, its patients, and its employees. (Statement of Matters Complained of on Appeal 1.b)

As set forth above, the third element in the Restatement (Second) requires the Plaintiff to establish the absence of privilege or justification on the part of the Defendants. In this case, the Hospital and Mr. Weinstein presented evidence that Dr. Sortino was disruptive and belittling to the hospital nurses on November 22, 2011 and that he was so loud and rude that a visitor came out of another room and confronted him. The Appellants also presented evidence that Dr. Sortino was loud and disruptive during a Critical Care Committee meeting and that he complained about certain staff members at a staff dinner. The Hospital and Mr. Weinstein also presented the testimony of Dr. Conte, a consultant hired by the Hospital to review its

11

management of surgical operation. Dr. Conte advised the Hospital to change the leadership provided by Dr. Sortino and the Hospital was following the advice when it requested Dr. Sortino's removal. On the other hand, Dr. Sortino presented evidence attacking the issue of justification. He argued that the behavior incidents were minor and he apologized for the loud and disruptive voice but the underlying issue being that nurses were not following physicians' orders was not being addressed by hospital management and that dismissing him was the only way to silence him. Further, he argued that by allowing him to remain at the Hospital doing surgeries for several months, the Hospital and Mr. Weinstein were not concerned about his behavior or alleged patient safety and that his removal was because he was vocal in his complaints about patient care. The jury was free to accept or reject the testimony. Dr. Sortino presented evidence, if believed, that would support a decision that the Hospital/Mr. Weinstein were not justified in their decision.

### 3. RESIGNATION

The evidence failed to establish that the Hospital's request to remove Dr. Sortino from the Hospital directly and proximately caused the termination of his employment contract or the damages that he alleges because he voluntarily resigned from his Three Rivers employment and voluntarily relinquished his ownership interest in Three Rivers in exchange for valuable monetary consideration and a new employment contract at another hospital. (Statement of Matters Complained of on Appeal 1.c)

It is unrefuted that subsequent to his leaving Washington Hospital, Dr. Sortino resigned from Three Rivers Cardiac both as a shareholder and as an employee. Dr. Sortino testified that he felt forced to do so and it was not voluntary. The jury was free to believe or reject that testimony.

### 4. MR. WEINSTEIN'S SCOPE OF AUTHORITY

12

The evidence established that Mr. Weinstein acted at all times within the scope of his authority as CEO and President of the Hospital and did not engage in any misfeasance. (Statement of Matters Complained of on Appeal 1.d)

Appellants assert that Mr. Weinstein should have been dismissed as a party from the action because he was acting as an officer of the Hospital when he contacted Three Rivers concerning the Plaintiff's employment. Pennsylvania jurisprudence has long allowed for an officer of a corporation who takes part in the commission of a tort by the corporation to be personally liable for the tort. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86 (Pa. 1983); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247, 252 (Pa. Super. Ct. 1977). Dr. Sortino argued at trial that act of tortious interference by Mr. Weinstein occurred when he sent the letter requesting Plaintiff be removed from the Hospital to Three Rivers. This letter was signed by Mr. Weinstein in his capacity as the President and CEO of the Hospital. Mr. Weinstein would be liable under the participation theory if a jury found the letter to be false, unsubstantiated, and misleading. The jury was free to accept or reject that testimony.

## 5. MUTUAL GENERAL RELEASE

The evidence established that Dr. Sortino executed a mutual general release of all claims that he had against Three Rivers relating to his removal from the Hospital, including claims for tortious interference with contact and for an alleged conspiracy, and thus is estopped from pursuing such claims against the Hospital or Mr. Weinstein. (Statement of Matters Complained of on Appeal 1.3)

Dr. Sortino signed a Mutual General Release with Three Rivers Cardiac, releasing all claims between them. The Appellants contended that this Mutual General Release operated to also release the Hospital from any and all claims that Dr. Sortino may have had related to his tenure at the hospital. In the release, Dr. Sortino releases and holds harmless "Three Rivers and its directors, stockholders, agent, servants, employees, representatives, attorneys, trustees, members, affiliates, successors and assigns" (all hereinafter collectively referred to as "the

13

Released Parties"). Exhibit 86. It further defines the word "affiliate" to include "(i) any corporations, partnership or limited liability company or other legal entity that is controlled by any of the Released Parties and/or (ii) any corporation, partnership or limited liability company or other legal entity that is controlled by or is under common control of any of the Released Parties. The Release also specifically releases claims "for conspiracies with the Hospital to coerce one to assign my medical staff privileges at the hospital." Immediately prior to the execution of the Mutual General Release, the Plaintiff, through counsel, had accused Three Rivers Cardiac of conspiring with the Hospital to force him to resign from the Hospital and threatened to sue Three Rivers Cardiac.

In examining a release, the Court must utilize general contract principles of law. *Martin v. Donahue*, 698 A.2d 614 (Pa. Super. 1997). While the consideration for this release was provided by Three Rivers Cardiac, a release may discharge others who had not provided consideration. *Buttermare v. Aliquippa Hospital*, 522 Pa. 325, 561 A.2d 733 (1989). The Court, in considering the Release, must give effect to the intent of the parties, but the primary consideration must focus on the document itself. *Ford Motor Co. v. Buseman*, 954 A.2d 580 (Pa. Super. 2008). The language of the Release is clear. The Release was from Dr. Sortino to Three Rivers Cardiac. What encompassed the release entities was cogently defined. It did not include all persons or entities with whom Three Rivers Cardiac had a contract or to which it provided services. If the intent of the parties was to release the Hospital, it would have so stated. The Hospital was not any one of the defined Released Parties. Three Rivers Cardiac provided medical services to the Hospital. The Hospital was a consumer or customer of Three Rivers Cardiac. It was not a director, stockholder, agent, servant, employee, representative, attorney, trustee, member, affiliate, successor or an assignee of Three Rivers Cardiac. The

14

Defendants argue that the circumstances surrounding the execution of the Release establish an intent to include the Hospital. Specifically, the language that releases claims "for conspiracies with the Hospital to force one to assign my medical staff privileges" show that intent, the Defendants argue. That language clearly shows that Three Rivers Cardiac contemplated being sued for conspiracy. There is nothing in that language that implies the release is for the benefit of the Hospital as well. A judgment as a matter of law to dismiss the case based upon the mutual release was not proper and the Court did not err.

## 6. SHAREHOLDER STATUS

The evidence established that Dr. Sortino, as an equal shareholder and owner of Three Rivers, was bound by Three Rivers' independent investigation of his conduct and its agreement with the Hospital that he should be removed. (Statement of Matters Complained of on Appeal 1.4)

The Agreement between the Hospital and Three Rivers Cardiac required Three Rivers to independently investigate any complaint it received from the Hospital. In this case, there is no evidence that such an investigation was undertaken by Three Rivers. Evidence was presented that Mr. Weinstein's investigation, upon which apparently Three Rivers relied, was not thorough in that he did not speak with anyone who had signed a petition in support of Dr. Sortino. The Appellee was not contending at trial that Three Rivers did not have the contractual right to remove him; Three Rivers was not a party to this action and never was. The contention at trial was whether the Hospital interfered with the contract between Dr. Sortino and Three Rivers. Dr. Sortino's status as a shareholder in Three Rivers was irrelevant.

## 7. DAMAGES

The Appellants assert that the trial committed an error of law and/or abused its

discretion in that it failed to order a new trial or enter a remittitur on the issue of damages, setting forth 12 reasons in Paragraph 2(a)-(i) in their Statement of Matters Complained of on Appeal.

The Court should grant a motion to mold the verdict and reduce a jury award only if it is manifestly excessive. *Tindall v. Friedman*, 970 A.2d 1150 (Pa. Super. 2009). As stated by the Superior Court

> The Court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive.

*Tillery v. Children's Hospital of Philadelphia*, 156 A.3d 1233, 1246 (Pa. Super. Ct. 2017), quoting *Tindall, supra.*

Under the Restatement (Second) of Torts, §774(A), the proper damages that may be awarded are as follows:

1.) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

a.) The pecuniary loss of the benefits of the contract or the prospective relation;

b.) Consequential losses for which the interference is a legal cause; and

c.) Emotional distress or actual harm to reputation, if they are reasonably expected to result from the interference.

Dr. Sortino offered evidence that his financial injury was approximately $800,000 ($787,000). Presumably, the jury accepted that amount and found damage for loss of reputation, emotional distress and humiliation to be valued at $2,700,000.

The Appellants claim the verdict was against the weight of the evidence and/or the result of "passion, prejudice, sympathy for Sortino, mistake, corruption and/or a misconception

16

of the law." (Statement of Matters Complained of on Appeal Paragraph 2(a)). No allegation of corruption or prejudice was made during trial or during post-trial proceedings. As to the general weight of the evidence claim, Dr. Sortino presented evidence that he was devastated that he was forced from the Hospital. (T.T. pp. 17-18). He begged for his job in front of a colleague, Dr. Cullen. (T.T. p. 20). He lived a nomadic life for more than five years after he left the Hospital. Nurse Crosier testified that during the time Dr. Sortino remained at the Hospital, awaiting his replacement, he was not sleeping well, had bad color and looked drawn and stressed. (T.T. p. 702). He suffered indignity in applying for Unemployment Compensation. While the Appellants argue that because his wife and children did not testify and no medical evidence substantiated emotional distress was presented, the verdict was shocking. Dr. Sortino testified that he lived apart from his family; a reasonable inference can e made that he and his family suffered as a result. Testimony was offered from lay persons that Dr. Sortino looked gaunt and stressed; a reasonable inference can be drawn that Dr. Sortino's health suffered. Substantial evidence was presented, if believed, to justify the award.

The Appellants also contend that the damage award represented punitive damages. The Court did not instruct the jury on punitive damages and clearly instructed them to only consider actual damages incurred.

The Appellants also argue in Paragraph 2(g) that Dr. Sortino's assignment to the Hospital was not guaranteed for any fixed term, thereby affecting the damage award. Dr. Sortino had been at the Hospital for close to twenty years. The financial damages were indeed capped at five years, as that is when Dr. Sortino was earning a salary equivalent to when he left. The Appellants made their arguments to the jury as to damages, asserting that his employment was not guaranteed, was subject to non-renewal or termination, and/or should end

17

with his cessation of employment with Conemaugh Hospital. The jury was free to accept or reject those arguments. Those are not questions of law; the issue of damages is up to the jury to decide. The verdict did not shock one's sense of justice and was not excessive.

## 8. EXCLUSION OF EVIDENCE

The Appellants assert that the Court committed an error of law and/or abused its discretion when it improperly excluded evidence in five different matters as follows: (Statement of Matters Complained of on Appeal 3.(a)-(e)).

a.) Meeting with Dr. Sortino and Three Rivers Cardiac in June 2011

The Appellants attempted to elicit testimony from Dr. DeMarco that at a Three Rivers Cardiac meeting, the Plaintiff made verbal outbursts and received a written warning from Three Rivers Cardiac and that Three Rivers Cardiac never told Defendant Weinstein about that incident. They further wanted to elicit that if Mr. Weinstein knew that at the time, he would not have appointed Dr. Sortino medical director a few weeks later.

Initially, the Hospital attempted to elicit testimony from Dr. Sortino that he was disruptive at a Three Rivers Cardiac meeting in June 2011 and received a written warning from Three Rivers Cardiac and that Mr. Weinstein was never told about the incident. After objection on behalf of Dr. Sortino, the Appellant asserted that the testimony would demonstrate that had he known of the incident, Mr. Weinstein may not have made the decision to renew the contract. T.T. p. 471. The Court ruled that it was too speculative. However, this same information was eventually presented to the jury through the testimony of Dr. DeMarco. Called on behalf of the Hospital, Dr. DeMarco testified that he has been the president of Three Rivers Cardiac for the last fifteen or seventeen years. Over Appellee's objections, Dr. DeMarco testified about Dr. Sortino's history with Three Rivers Cardiac and testified that he had "recent disruptive behavior"

18

at a board meeting (in June 2011). T.T. 1389. Dr. DeMarco read an excerpt from the minutes that said the board voted to have a policy that since the Plaintiff had engaged in contentious conversations with their practice manager, the Plaintiff was not permitted to speak with her unless a board member was present. T.T. p. 1389. The Appellants clearly elicited the information they sought which, if believed, may have shown that Three Rivers Cardiac had reasons other than the letter from Mr. Weinstein to terminate Sortino's employment. No error was made or was resolved with the information being presented to the jury.

b.) Threat of lawsuit against Three Rivers Cardiac

The Appellants contend that the Mutual General Release and the January 31, 2012 letter from Dr. Sortino's counsel to Three Rivers Cardiac were wrongfully excluded, arguing that this evidence would show that the threat of litigation was the reason why Three Rivers Cardiac complied with the demand to remove Dr. Sortino from Washington Hospital. In his complaint, Dr. Sortino never alleged conspiracy between the Hospital and Three Rivers Cardiac. The Appellants themselves requested in a motion in limine to exclude any reference to conspiracy. If the foundation had been laid that the threat of being sued for conspiracy was a consideration in its decision to end their relationship with Dr. Sortino, Dr. DeMarco on behalf of Three Rivers Cardiac could have so made the inquiry relevant. As asked, it was not relevant.

c.) Reliance on advice of counsel

The Court first notes that the Appellants filed a motion in limine to preclude the Appellee from calling Appellants' counsel as a witness to testify that he provided advice as to the decision to seek Dr. Sortino's removal. The Appellants requested that care be made to not bring up the fact so as not to compromise his ability to serve as trial counsel. The defense of reliance on counsel as justification was never offered until the trial was underway. The Appellee

19

objected, stating that it was a surprise and would bring into question Mr. Binotto's role as trial counsel and as the attorney who offered that advice. The exclusion of the evidence was proper.

d.) Butler Hospital Records

The Appellants wanted to put into evidence that Dr. Sortino received a negative peer review while at Butler Hospital. The Appellants assert that if the Dr. Sortino was fired at Butler Hospital or discharged for poor performance, then his damages from any wrongful act by the Defendants would end at the termination and particularly would end any emotional distress claims due to the Hospital's actions. The Court found that the prejudicial effect outweighed any relevance. There was no clear indication that Butler Hospital fired Dr. Sortino at all and to explore their reasoning for discharge would be far afield of the claim of the Plaintiff. This evidence was properly excluded.

e.) Defendants' damage chart

The Court excluded this evidence as it contained tax information that was not relevant or had not been presented at trial. The Defendants were clearly allowed to present evidence and argue about what they contended were proper damages if they were found liable and they clearly did so. Not using a chart did not hamper their ability to present their case and would be harmless error if it were incorrect.

## 9. JURY INSTRUCTIONS

The Appellants raise eight objections to the jury charge given by the Court. (Statement of Matters Complained of on Appeal Paragraph 14) An error in a jury charge is a sufficient basis for a new trial if, after considering the charge as a whole, the issues were not made clear or the jury was misled by the instructions or a fundamental omission from the charge occurred.

20

*Salsgiver Communications, Inc. v. Consolidated Communications Holdings, Inc.*, 150 A.3d 957, 2016 Pa. Super. 244 citing *Commonwealth v. Chambers*, 980 A.2d 35, 602 Pa. 224 (2009).

a.) Intent to Harm

The Appellants requested an instruction informing the jury that Dr. Sortino had to establish the Hospital and Mr. Weinstein had an intent to harm Dr. Sortino. (Defendant's Proposed Instruction No. 14). The Court instructed the jury that Dr. Sortino had to establish as an element an intent to interfere. The Court set forth in its instructions all factors as set forth in the Restatement (Second) and as requested by the Appellants. While many cases use the words "intent to harm," in describing the element of intentional interference with a contract, it has not been examined in the context it is in here. The Restatement (Second) defines the element as "Intent...to harm...by interfering..." Comment to the Restatement (Second) that ill will is not a condition of liability. A Defendant may be liable even when he acts with no desire to harm the other. Taken as a whole, the Court clearly defined intent and the instruction was proper.

b.) Truthful Information

The Appellants' proposed Jury Instruction on Justification included 15 – Restatement (Second) §772 and No. 16 – Protect legitimate Interest.

## INSTRUCTION NO. 15
### PRIVILEGE OR JUSTIFICATION – TRUTHFUL INFORMATION

Dr. Sortino must prove, by a preponderance of the evidence, that the Washington Health System and/or Gary Weinstein, did not provide truthful information or honest advice to Three Rivers.

One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person: (a) truthful information, or (b) honest advice within the scope of a request for the advice.

There is no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another.

21

This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

## INSTRUCTION NO. 16
### PRIVILEGE OR JUSTIFICATION – PROTECT LEGITIMATE INTEREST

Dr. Sortino must prove, by a preponderance of the evidence, that the Washington Health System and/or Gary Weinstein, did not act at least in part for the purpose of protecting some legitimate interest.

Washington Health System and/or Gary Weinstein do not act improperly when they act at least in part for the purpose of protecting some legitimate interest which conflicts with that of Dr. Sortino.

Washington Health System and/or Gary Weinstein are privileged to interfere with another's performance of an existing contract when:

1. Washington Health System and/or Gary Weinstein have a legally protected interest.

2. Washington Health System and/or Gary Weinstein act or threaten to act to protect that interest; and

3. The threat is to protect that interest by proper means.

The requirement of wrongful conduct requires something more than simply a breach of contract; the relevant inquiry must focus on the propriety of a defendant's conduct considering the factual scenario as a whole. Although, in an intentional interference with contractual relations claim, the evaluation of whether a defendant's conduct is to protect legitimate rights or interests is not always susceptible of precise definition, the central inquiry is whether the defendant's conduct is sanctioned by the "rules of the game" which society has adopted.

It is not the jury's function to question the decision of Gary Weinstein or decide whether they would have done something different or less than request Dr. Sortinos' complete removal from the Hospital. It is your function to decide only whether Mr. Weinstein when he made his decision was acting out of ill will or with a motive to intentionally interfere with Dr. Sortino's employment contract.

If you find that Mr. Weinstein's letter of January 13, 2012 to Three Rivers requesting the removal of Dr. Sortino from his leadership position at the Hospital and as a physician was the good faith exercise of his contractual rights under the provisions of its exclusive contract with Three Rivers, then you must rule in favor of the Hospital. (Citations omitted)

22

The Appellants claim that the truth defense as set forth in §772 of the Restatement (Second) is applicable. The Pennsylvania Supreme Court adopted §772 in *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468 (Pa. 2011). The Appellant contended that there was no truth to the information that formed the basis for the Hospital's decision to inform Three Rivers that Dr. Sortino was no longer wanted at the Hospital, that his behavior in the CCU and at the Critical Care Meeting was mentioned as a ruse to silence Dr. Sortino who was speaking up about patient care. The jury was instructed on how to weigh the evidence and was given instruction on the four elements and taken as a whole were a proper reflection of the law.

c.) Mr. Weinstein's liability

The Court's instruction was as follows:

"First, I want to tell you about law specific to this case. First, I want to explain the relationship between the Defendants, both Washington Hospital and Gary Weinstein.

An employer is liable to third persons for the wrongful acts of its employee committed during the course and within the scope of the employment.

In this case, the Defendant, Gary Weinstein, was an officer and employee of the Defendant, Washington Hospital, and, at the time, was acting during the course and within the scope of his employment. And in such circumstances, Washington Hospital is liable for the acts of its employees and the officer, Gary Weinstein.

And under the participation theory, an officer of the corporation who takes an active part in the commission of a wrongful act by the corporation is personally liable."

TT. 3/17/17 pp. 2093-2094

The Defendants Proposed Jury Instructions were No. 7 and 8.

INSTRUCTION NO. 7
LIABILITY OF AGENTS OF CORPORATION

As a general rule, the Washington Health System and its agents, such as its

23

President, Mr. Weinstein, are not distinct parties for purposes of contracting and thus a corporation's agents cannot be held individually liable to have tortiously interfere with a contract.

When acting within the scope of his or her authority, an employee, such as Mr. Weinstein and the Washington Health System are considered the same entity; and Mr. Weinstein cannot be considered a third party when acting within the scope of his own employment. Employees acting within the scope of their employment cannot be liable on contractual interference claims cased on a contract between a co-employee and the mutual employer.
(Citations omitted)


## INSTRUCTION NO. 8
## PARTICIPATION THEORY OF LIABILITY

For Mr. Weinstein to be individually liable, you must first find that he acted outside of the scope of this authority and you must find that his conduct under the facts and circumstances was wrongful and not justified.

An individual is not personally liable for the wrongful conduct of a corporation just because that individual is an officer of that corporation. However, in this case, Dr. Sortino claims that Gary Weinstein actively and knowingly participated in the wrongful conduct.

Dr. Sortino must establish that Mr. Weinstein engaged in misfeasance rather than mere nonfeasance. Misfeasance involves the improper performance of an act whereas nonfeasance refers to the simple failure to act. Dr. Sortino must also prove active and knowing participation in the wrongful conduct by Gary Weinstein to impose personal liability on Gary Weinstein.

Gary Weinstein may be held personal liability if you find that he took part in the wrongful conduct, specifically directed someone to engage in the wrongful conduct, or actively cooperated in the wrongful conduct and his conduct was not justified.
(Citations omitted)

The Appellants' expanded instruction found in their proposed No. 8 was not relevant to the case at hand. Instruction No. 7 included "Employees acting within the scope of their employment cannot be liable on contractual interference claims based on a contract between a co-employee and the mutual employer." That factual scenario did not exist in this case. The

24

jury charge as given sufficiently explained the relationship between the Defendants and the liability of each.

d.) Damages – Not based on sympathy

The Court did in fact instruct the jury properly on damages. The Court stated "The purpose of awarding damages is to compensate the Plaintiff. It is not to punish a wrongdoer or to make the Plaintiff wealthy. Damages should not be awarded on the basis of sympathy or benevolence, but should be limited to reasonable compensation for the loss involved. (March 17, 2017 T.T. p. 149). No objection was made to this instruction and the Court is unaware of the basis for this objection now.

e.) Damages – "Actual"

The Appellants assert that the Court should have used the word "actual" damages in its instructions, that it should have defined emotional distress and that it should have instructed the jury that Dr. Sortino was not entitled to attorneys' fees or punitive damages. There is no requirement that the words "actual damages" be given. The Court told the jury that damages must be limited to reasonable compensation for the loss involved. The Court further explained financial injury and also that Dr. Sortino was entitled to compensation for emotional distress, humiliation and harm to Dr. Sortino's reputation. Those terms are common and generally known to the public. The Appellants did not seek a special instruction as to emotional distress and the Court finds this is waived.

f.) Punitive damages

The Appellants claim that the Court erred in not telling the jury that they could not award punitive damages, that Dr. Sortino was not entitled to punitive damages.

25

The Court contends that instructing a jury on what they should not consider is confusing and not helpful. The Court's jury charge in this case involving a single count of contractual interference lasted <u>about</u> an hour. There was no error in not giving that instruction.

    g.) No contractual rights under the Medical Staff Bylaws

    and

    h.) Mutual general release.

These two requested jury instructions involve issues of law on which the Court ruled adversely to the Appellants. The proposed jury instructions would be inconsistent with the Court's ruling and were not appropriate. No error occurred.

## 10. VERDICT SLIP

The Appellants raise two issues with the Verdict and Interrogatories to the Jury. (See Statement of Matters Complained of on Appeal Paragraph 5 and 6) Appellants claim that the verdict should have included the element of tortious interference and should not have used the word "intentionally interfered" rather than interfered.

The verdict slip must be considered on its entirety. The appellant did not object to the final verdict slip. (T.T. 3/17/17 p.8).

April 18, 2019
DATE

KATHERINE B. EMERY,
PRESIDENT JUDGE

26